**THE HONORABLE BENJAMIN H. SETTLE**

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BUNKER HOLDINGS LTD.,

             Plaintiff,

     vs.

M/V YM SUCCESS (IMO 9294800), her tackle, boilers, apparel, furniture, engines, appurtenances, etc., *in rem*,

             Defendants.

IN ADMIRALTY

CASE NO.: 3:14-cv-06002-BHS

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

AND

PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

NOTED ON MOTION CALENDAR:

**Friday, March 25, 2016**

**&**

**Friday, April 15, 2016**

     **COMES NOW,** Plaintiff, BUNKER HOLDINGS LTD. (hereinafter "Bunker Holdings" or "Plaintiff"), by and through undersigned counsel, who respectfully submits this Memorandum in Opposition to the Motion for Summary Judgment filed by Claimant Yang Ming Liberia Corp. ("Yang Ming")[1] and in support of Bunker Holding's cross-motion for

---

[1] Plaintiff has not asserted any *in personam* claims against Yang Ming. Plaintiff's sole claim in this action is an *in rem* claim against the Defendant Vessel to enforce a maritime lien for necessaries undisputedly provided to the Vessel by Plaintiff. *See* Dkt. #1. As set forth in the Declaration of Alan Wang (Dkt. #25) the registered owner of

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 1 (3:14-cv-06002-BHS)

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons more fully set forth below and in the accompanying declaration of the General Director of Bunker Holdings, Evgeny Kelmanov (hereinafter "Kelmanov Decl."), Plaintiff respectfully submits that there is no genuine issue of any material fact in this action with respect to Plaintiff's maritime lien claim against the Vessel and that the Court should, as a matter of law and undisputable fact, grant summary judgment against the M/V YM SUCCESS in the sum of USD 1,855,155.00, plus applicable  interest and costs.

## I.   **INTRODUCTION**

On October 13-14, 2014, Plaintiff Bunker Holdings supplied marine bunker fuel to the M/V YM SUCCESS at the port of Nakhodka, Russia.  *See* Kelmanov Decl., at ¶ 19.  There is no dispute that the bunkers were received by the ship's crew and subsequently consumed by the Vessel.  *Id.*  Similarly, there can be no dispute that the bunkers were essential and necessary for the continued operation of the Vessel.  *See* Answer, Dkt. #17, at ¶ 18.  Notwithstanding, Bunker Holdings has not been paid for the bunkers indisputably provided to the Vessel.  Kelmanov Decl., at ¶ 32.  As will be set forth below, Plaintiff has a valid and enforceable maritime lien against the M/V YM SUCCESS, in accordance with the Commercial Instruments and Maritime Lien Act, 46 U.S.C. § 31301, *et seq.*, ("CIMLA"), and summary judgment should be granted in favor of Plaintiff Bunker Holdings.

Plaintiff's claim, and legal principle upon which it rests, has long been validated and accepted by U.S. Courts which have carefully considered and favorably resolved similar bunker supply claims as a matter of undisputed fact and law.  The United States permits the Supplemental Rule C arrest of a vessel, *in rem*, to enforce a maritime lien against the vessel when a supplier has provided necessaries (*i.e.*, bunkers) to the vessel on the authority of the Owner <u>or</u> an authorized party who has the presumed authority to act on behalf of the vessel.

the Y/M SUCCESS is Yang Ming Liberia Corp., but the vessel's ISM Manager, Operator, and beneficial owner is Yang Ming (Marine) Transport Corp. Dkt #25, ¶ 1.  For ease of reference, Plaintiff may refer to both entities collectively as "Yang Ming" or as "Claimant".

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 2 **(3:14-cv-06002-BHS)**

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

46 U.S.C. § 31301.  The reasoning behind this codified right finds its genesis in the peripatetic nature of shipping wherein the usual parties to a maritime dispute (as well as their assets) are transitory.  *See Polar Shipping, Ltd. v. Oriental Shipping Corp*, 680 F.2d 627 (9th Cir. 1982), where the Ninth Circuit Court of Appeals noted:

> Maritime law deals primarily with ships that sail the seven seas.  A ship may be here today and gone tomorrow, not to return for an indefinite period, perhaps never.  Assets of its owner …, within the jurisdiction today, may be transferred elsewhere or paid off tomorrow.  ***It is for these reasons that maritime actions in rem, libeling a ship or other asserts of a defendant, Supplemental Rule C,*** or attachment in actions *in personam*, Supplemental Rule B, ***were developed. These reasons are as valid today as they ever were***.

*Id*. at 637 (emphasis added); *see also Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986) (a maritime lien "serv[es] the dual purpose of keeping ships moving in commerce while not allowing them to escape their debts by sailing away … The lien is a special property right in the vessel, arising in favor of the creditor by operation of law as security for a debt or claim.") (citation omitted); *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648, 655 (2d Cir. 1979) (recognizing that "the perpetrators of maritime injury are likely to be peripatetic") (*citing In re Louisville Underwriters*, 134 U.S. 488, 493 (1890)).[2]

## II.   FACTUAL AND PROCEDURAL BACKGROUND

It is undisputed that Yang Ming, arranged with O.W. Bunker Far East (S) Pte. Ltd. ("OWB Far East") for bunkers to be delivered and supplied to the M/V YM SUCCESS in September/October 2014.  *See* Dkt. #25, ¶¶3-4.  On or about October 8, 2014, OWB Far East, for and on behalf Yang Ming and the Vessel, engaged Bunker Holdings to supply bunkers to

---

[2] As the Ninth Circuit has further explained, an *in rem* action in the United States is an action against the named property itself.  *Ventura Packers, Inc. v. F/V JEANINE KATHLEEN*, 424 F.3d 852, 858 (9th Cir. 2005) ("[T]he theoretical basis for the maritime lien rests on the legal fiction that the ship itself caused the loss and may be called into court to make good.  Thus, the holder of a maritime lien has 'the right to proceed in rem directly against the vessel' that is the fictional cause of the loss.")(quoting *Chugach Timber Corp. v. N. Stevedoring &Handling Corp. (In re Chugach Forest Prods., Inc.)*, 23 F.3d 241, 245 (9th Cir. 1994)).

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 3 (3:14-cv-06002-BHS)

**LAW OFFICES OF**
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

the M/V YM SUCCESS at the port of Nadhodka, Russia. *See* Kelmanov Decl., at ¶ 8. At the time that Bunker Holdings was engaged to provide the bunkers, it had a previous course of business with both OWB Far East **and** Yang Ming. *Id*., at ¶ 9. Specifically, Bunker Holdings had previously provided bunkers to twelve (12) Yang Ming vessels during the period of April 2013 through September 2014, at the Russian ports of Vladivostok, Nakhodka, and Novorossiysk. *Id*., at Exhibit 1. For the previous supplies to Yang Ming vessels during the year preceding the order of bunkers for the YM SUCCESS, five (5) of the supplies were ordered by OWB Far East on behalf of Owners and Operators of the following Yang Ming vessels: YM MASCULINITY (January 25, 2014); the YM ELIXIR (February 18, 2014); the YM NEW JERSY (April 9, 2014); YM CYPRESS (July 27, 2014); and the YM MODERATION (September 21, 2014). *Id*., at ¶¶ 9-10. It is well known and Bunker Holdings knew at all material times that the vessels within the Yang Ming fleet are identified by the pre-fix "YM" for each of the vessel names. *Id*., at ¶ 11.

When engaged on October 8, 2014, Bunker Holdings confirmed the order of bunkers the same day to OWB Far East and incorporated their terms and conditions thereto. *Id*., at ¶ 12. OWB Far East issued a Purchase Order Confirmation which confirmed the rates and terms of the supply to the M/V YM SUCCESS. *Id.,* at ¶ 13. Specifically, the order of supply was for 3500 metric tons of Fueloil 380-CST 3.5% (at a rate of USD 480.33 per mt) and 400 metric tons of 380-CST 1% (at a rate of USD 510.00 per mt), to be delivered to the M/V YM SUCCESS at the Port of Nakhodka, Russia. *Id.* The Sales Order Confirmation, as with all of Bunker Holding's bunker fuel transactions, clearly, unambiguously, and expressly provided that all sales and deliveries were subject to Bunker Holding's Terms and Conditions. *Id.*, at ¶ 16-17, and Exhibits 2 and 3 thereto.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT - 4 (3:14-cv-06002-BHS)

LAW OFFICES OF
NICOLL BLACK & FEIG
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

On October 13 and 14, 2014, Bunker Holdings duly supplied, through its designated agent Baltic Tanker Co., Ltd. ("Baltic Tanker")[3], 400 metric tons of 380-CST 1% and 3500 metric tons of Fueloil 380-CST 3.5% to the M/V YM SUCCESS at the agreed to supply point, Nadhodka, Russia.  *Id.*, at ¶ 19 and Exhibit 5.  In accordance with Bunker Holdings' standard practices and procedures, the bunker delivery notes incorporated and included Bunker Holdings' Terms and Conditions. Id., at ¶ 20.  The bunkers were signed for and accepted on behalf of the Vessel by the duly authorized representatives of the Vessel, *i.e.* the Master and Chief Engineer. *Id.*, at ¶ 21 and Exhibit 5.  In addition, supplemental documentation evidencing the supply of the bunkers to the Vessel, including Sample Receipts, Loading Confirmations, Safety Checklists, and Notifications were provided to and signed by the Master and Chief Engineer of the Vessel for and on behalf of the Vessel. *Id.*, at ¶ 22.

The Terms and Conditions specifically provide Bunker Holdings with the right of a maritime lien against the Vessel in all jurisdictions, including the United States of America, which grant a maritime lien and the right to arrest the Vessel in any jurisdiction where the Vessel is found.  *Id.,* at Exhibit 3, Clause 13.2.  Specifically, the Terms and Conditions state:

> For the sole benefit of the Seller it is further agreed that the Seller without prejudice to any rights hereunder of the Seller or any claim raised pursuant to Clause 13.1 above have the right to proceed against the Buyer, any third party or the Vessel in such jurisdiction as the Seller in its sole discretion sees fit inter alia for the purpose of securing payment of any amount due to the Seller from the buyer or the Owner (pursuant to a payment guarantee). In such circumstances the proceedings shall be governed by the law (substantive and procedural) of such jurisdiction.

*Id.*

---

[3] Bunker Holdings and Baltic Tanker have an agency agreement dated July 10, 2013, in which Baltic Tanker was responsible for, *inter alia*, sourcing and delivering bunker fuel in the Russian Federation to Bunker Holdings' ownership subject to agreed pre-payment financing terms between the companies.  Said another way, Bunker Holdings provided Baltic Tanker with financing up front as its agent in Russia and Baltic Tanker would source the fuel locally in Russia so that Bunker Holdings could fulfill orders to Vessels at the Ports of Saint Petersburg, Ust-Luga, Novorossiysk, Vostochny, Nakhodka, Vladivostok, and Vanino.  Baltic Tanker did not own the bunkers; at all times it was acting as agent for Bunker Holdings and the bunkers were paid for by Bunker Holdings and supplied to the M/V YM SUCCESS on Bunker Holdings' order. *See* Kelmanov Decl., at ¶¶ 28-29.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 5 (3:14-cv-06002-BHS)

LAW OFFICES OF
NICOLL BLACK & FEIG
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

1   In accordance with Bunker Holdings' standard procedures, invoices for the supply were

2   provided for the sum total of USD 1,885,155.00.  *Id.*, at ¶¶ 22-26.  The invoices called for

3   payment within thirty (30) days in accordance with Bunker Holdings' Terms and Conditions.

4   Notices of the unpaid bunkers were subsequently provided to Owners of the Vessel on or about

5   November 8, 2014 through notice to Yang Ming at various corporate email addresses. *Id.*, at ¶¶

6   25-27, and Exhibit 7-8.  The bunkers supplied to the M/V YM SUCCESS were consumed by

7   the Vessel without objection or reservation, and USD 1,855,155.00 remains due and owing to

8   Bunker Holdings, exclusive of interest and costs. *Id.*, at ¶¶ 30-32.

9       It is respectfully submitted that the evidence submitted in the record by Bunker

10  Holdings clearly shows that: (1) there was a valid contract between an authorized

11  representative of the Vessel, OWB Far East and Bunker Holdings for the supply of fuel to the

12  Vessel; (2) that the bunker fuel was delivered to the M.V YM SUCCESS; and (3) that Bunker

13  Holdings has not received payment for the necessaries supplied to the Vessel. *See* Kelmanov

14  Decl.   As discussed more fully below, the supply was subject to Bunker Holdings' Terms and

15  Conditions, which included valid provisions permitting Bunker Holdings the right to a

16  maritime lien on the Vessel for amounts outstanding for the supply and delivery of fuel

17  bunkers. *Id.*, at Exhibit 3.

18      Plaintiff commenced the instant action to enforce its maritime lien on December 22,

19  2014.  *See* Dkt. #1.  This Court granted the Order authorizing Rule C arrest of the Vessel to

20  enforce the maritime lien on December 22, 2014 and the Vessel was arrested in the District by

21  the U.S. Marshal.  *See* Dkt. #7, #14.  On December 30, 2014, it was stipulated and agreed

22  between Bunker Holdings and Yang Ming, that substitute security in the form of an Agreed

23  Letter of Undertaking in the amount of USD 2,400,000.00 be posted as substitute for the *res*

24  and the Vessel was released.  *See* Dkt. #12.

25

26

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT - 6 (3:14-cv-06002-BHS)

LAW OFFICES OF
NICOLL BLACK & FEIG
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

## III.   ARGUMENT AND AUTHORITIES

### A.   Issue(s) for the Court to Resolve.

It is respectfully submitted that Claimant Yang Ming's Motion for Summary Judgment and Plaintiff Bunker Holdings' Cross-Motion for Summary Judgment present for the Court's determination a single issue for resolution, specifically, whether Plaintiff is entitled to enforce a maritime lien against the M/V YM SUCCESS for the supply of bunkers.  Accordingly, while competing motions for summary judgment must be independently resolved by the Court, the facts, issues, and claims that each party cites to in support of its respective motion for summary judgment are essentially "two (2) sides of the same coin," Plaintiff's argument that there is a maritime lien and Claimant's argument that there is not.  Accordingly, the motion for summary judgment and cross-motion for summary judgment should (and likely must) be resolved at the same time.[4]

### B.   Legal Standard for Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure mandates that a Court grant summary judgment in an action "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  For a fact to be material, it must have the capacity to affect the outcome.  *Hodges v. Delta Air Lines, Inc.,* 2010 U.S. Dist. LEXIS 138542, *4 (W.D. Wash. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)).  "An issue is genuine if there is evidence that such a 'reasonable jury could return a verdict for the non-moving party." *Wind Energy Partnership v. Nextera Energy Resources, LLC*, 2012 U.S. Dist. LEXIS 81519, * 3 (C.D. Cal.

---

[4] Consistent with LCR 7(k), counsel for the parties attempted to confer on a proposed revised briefing schedule, but were unable to agree.  Given the limited issues in this matter and the fact that both the Claimant's motion for summary judgment and Plaintiff's cross-motion for summary judgment have been filed well in advance of the Court's Dispositive Motion Deadline of March 30, 2016 in this case, it is respectfully submitted that the parties are satisfied with the briefing schedule outlined in the Local Rules.

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

2012) (quoting *Anderson*, 477 U.S. at 248). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In reviewing a summary judgment motion, the Court must resolve any doubt as to genuine issues of material fact in favor of the nonmoving party." *Hodges*, 2010 U.S. Dist. LEXIS 138542 at *5 (*citing Dreiling v. America Online, Inc.*, 578 F.3d 995, 1000 (9th Cir. 2009)).

**C.     Claimant's Motion for Summary Judgment Must Be Denied as this Dispute Is Governed by CIMLA and Plaintiff Has a Maritime Lien.**

Yang Ming raises two alternative theories for why the maritime lien should not be enforced and Plaintiff's action dismissed. First, that U.S. law does not govern resolution of Plaintiff's dispute and second, that the bunkers were not ordered by an entity with authority to bind the vessel. For the following reasons, Yang Ming's arguments are without merit.

**1.     The choice of law and jurisdiction clauses contained in Plaintiff's Terms and Conditions were validly and unambiguously incorporated into the bunker sale contract.**

Plaintiff Bunker Holdings' Terms and Conditions, validly incorporated[5] by reference to the bunker supply contract, and which governed its provision of bunkers to the Vessel, expressly provide that Bunker Holdings has "the right to proceed against . . . the Vessel in such jurisdiction as [Bunker Holdings] in its sole discretion sees fit *inter alia* for the purpose of securing payment of any amount due to [Bunker Holdings] . . .  In such circumstances,

---

[5] *See World Fuel Servs. Trading v. Hebei Prince Shipping Co.*, 783 F.3d 507, 518-19, 2015 U.S. App. LEXIS 6341, 2015 AMC 929 (4th Cir. Va. 2015) ("The Bunker Confirmation plainly expresses that it incorporates the terms of another specific document, the General Terms. Consequently, [Buyer], along with any other reader of the Bunker Confirmation, was immediately put on notice of the existence of a specific additional document that contained provisions  that were also part of the Bunker Confirmation."); *see also* 11 Williston on Contracts § 30:25 (4th ed. 1999) ("Where a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument.").

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

the proceedings shall be governed by the law (substantive and procedural) of such jurisdiction."  *See* Kelmanov Decl. at Exhibit 3, Clause 13.2.  Pursuant to this clause, Plaintiff arrested the Vessel in the United States to secure payment of amounts rightly due and owing to it; Yang Ming posted substitute security to stand in place of the Vessel; and U.S. substantive and procedural law shall govern the resolution of these proceedings, including CIMLA, 46 U.S.C. § 31301 *et seq.*

Claimant frames the "choice of law" issue as if it exists in a vacuum because there is no contract between Yang Ming and Bunker Holdings.  Dkt. #24, pp. 7-9.  This is not the applicable standard under Ninth Circuit precedent.  In two (2) cases which represent the binding precedent of this Circuit, the Ninth Circuit Court of Appeals has had the opportunity to review and consider bunker supply contracts with terms analogous to the contract at issue in this matter.  *Trans-Tec Asia v. M/V HARMONY CONTAINER*, 518 F.3d 1120 (9th Cir. 2008); *see also O.W. Bunker Malta Ltd. v. M/V TROGIR*, 2013 U.S. Dist. LEXIS 19026, (C.D. Cal. 2013), *aff'd* 602 Fed. Appx. 673 (9th Cir. 2015).  In *Trans-Tec*, the bunker supplier's standard terms and conditions provided that "[s]eller shall be entitled to assert its lien or attachment in any country where it finds the vessel", with "[t]he laws of the United States [to] apply with respect to the existence of a maritime lien . . ."  *Trans-Tec.*, 518 F.3d at 1122.  In *M/V TROGIR*, the relevant bunker supplier's standard terms and conditions were exactly the same as Bunker Holdings' Terms and Conditions in this case.  *M/V TROGIR*, 2013 U.S. Dist. LEXIS 19026, at *2.  In both of those cases, the Ninth Circuit Court of Appeals approved the application of United States law to resolve the question of whether an enforceable maritime lien existed, and in both cases, it enforced the maritime lien against the Vessel.  *M/V TROGIR*, 602 Fed. Appx. 673.

The Ninth Circuit Court of Appeals provided a three (3) step method for determining if there is a maritime lien: "(1) we determine the governing law with respect to contract formation; (2) applying the controlling law, we next determine whether the contract

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 9 (3:14-cv-06002-BHS)

LAW OFFICES OF
NICOLL BLACK & FEIG
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

1    incorporates the choice of law provision; and (3) finally, if the choice of law provision is

2    incorporated as a term of the contract, we evaluate whether [the supplier] acquired a maritime

3    lien for supplying fuel bunkers to the [Vessel]." *Trans-Tec*, 518 F.3d at 1123-24.  Specifically,

4    the Ninth Circuit called for the Court to conduct a *Lauritzen v. Larsen*, 345 U.S. 571, 73 S. Ct.

5    921, 97 L. Ed. 1254 (1953), "choice-of-law" analysis only to determine which law applies to

6    the issue of contract formation to determine whether the choice of law was validly

7    incorporated into the terms of the bunker supply contract.  *Trans-Tec*, at 1124.

8            Here, Yang Ming has argued that, upon applying the multi-factor test set forth by the

9    United States Supreme Court in *Laurizen,* the Court should find that U.S. law does not apply to

10   the resolution of the dispute.[6]   The Ninth Circuit has held that, "the law of the flag

11   presumptively controls unless other factors point decidedly in a different direction."  *Bilyk v.*

12   *Vessel Nair*, 754 F.2d 1541, 1545 (9th Cir. 1985).  Accordingly, Liberian law governs the

13   limited question of whether the choice of law provision was incorporated into the contract. In

14   general, Liberia has adopted the General Maritime Laws of the United States as its own

15   General Maritime Law, and as such, the Court should presumptively uphold the forum and

16   choice of law clause in the bunker supply contract. *Great Lakes Reinsurance (UK) PLC v.*

17   *Durham Auctions Inc*., 585 F.3d 236, 239 (5th Cir. 2009) (holding that "[u]nder federal

18   maritime choice of law rules, contractual choice of law provisions are generally recognized as

19   valid and enforceable.").[7]

20           The Ninth Circuit in affirming District Judge Real's application of U.S. procedural and

21   substantive law to the resolution of the maritime lien claim in M/V TROGIR where the exact

22   _____

23   [6] Yang Ming either purposefully or neglectfully fails to articulate which law should govern, but in any event as
     explained herein, Yang Ming fails to properly apply the Ninth Circuit test from *Trans-Tec*.

24

25   [7] Even if another law were to apply, for example, Cypriot, Russian, or Singapore law, these laws **would not** apply
     to the resolution of the existence of a lien; they would apply solely to whether the law of those jurisdictions
     permitted freedom of contract to incorporate a forum selection clause in the bunker supply contract.  It is

26   respectfully submitted that Yang Ming has not and cannot establish any evidence which would lead to such a
     result.

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

1   same choice of law clause was applied, summarized the binding precedent which called for the

2   affirmation of the grant of summary judgment as follows:

3

4       We noted in *Trans-Tec Asia* that  "[a]bsent a strong showing that it should be set
        aside, the parties' choice of law provision, as part of a 'freely negotiated private

5       international agreement, unaffected by fraud, undue influence, or overweening
        bargaining power . . . should be given full effect.'" 518 F.3d at 1126 (quoting *M/S*

6       *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13, 92 S. Ct. 1907, 32 L. Ed. 2d
        513 (1972)). We further noted that in *Liverpool & London Steamship Protection*

7       *& Indemnity Ass'n v. Queen of Leman M/V*, 296 F.3d 350, (5th Cir. 2002), the
        choice-of-law clause provided that the insurer could "enforce its right of lien in

8       any jurisdiction in accordance with local law in such jurisdiction" and that the
        "Fifth Circuit declared that 'there is nothing absurd about applying the law of the

9       jurisdiction into which the ship sails, as the ship's presence in the jurisdiction
        represents   a    substantial    contact.'" *Trans-Tec    Asia*,    518    F.3d    at

10      1126 (quoting *Queen of Leman*, 296 F.3d at 353-54). We also observed that the
        language in the Federal Maritime Lien Act (FMLA), 46 U.S.C. § 31342, "is clear

11      and unambiguous," and "imposes no restriction on the nationality or other identity
        of the supplier or the vessel, and no geographic restriction on the place of

12      provision of the necessaries." *Trans-Tec*, 518 F.3d at 1129. Pursuant to this
        precedent, the fact that the choice-of-law clause did not specifically refer to the

13      laws of the United States did not restrict the district court from giving effect to the
        contracting parties' intent and recognizing a maritime lien under the FMLA when

14      the Vessel docked in Los Angeles.

15  *O.W. Bunker Malta Ltd. v. MV Trogir*, 602 Fed. Appx. 673, 675-76 (9th Cir. 2015).

16      As the Ninth Circuit Court of Appeals has stated, "[w]e will 'not artificially create

17  ambiguity where none exists.'"  *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir.

18  1990) (quoting *Allstate Insurance Co. v. Ellison*, 757 F.2d 1042, 1044 (9th Cir. 1985)).  "If a

19  reasonable interpretation favors the [drafter] and any other interpretation would be strained, no

20  compulsion exists to torture or twist the language of the [contract]." *Id.*

21      Here, the language of Plaintiff's Terms and Conditions is clear: the bunker supply

22  agreement should be governed and construed in accordance with English law (as provided in

23  clause 13.1) unless Bunker Holdings is proceeding against the buyer or the Vessel to secure

24  payment of any amount due to it, in which case the proceedings shall be governed by the law

25  (substantive and procedural) of the jurisdiction where security is sought. *See* Kelmanov Decl.,

26  at Exhibit 3. Clause 13.2 clearly and unambiguously provides an exception to the application

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT - 11 (3:14-cv-06002-BHS)

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

of English law; Bunker Holdings has sought to secure its lien by proceeding against the Vessel where it could be found in the United States in the Western District of Washington and, accordingly, U.S. procedural and substantive law should apply to these proceedings.

Based on the foregoing, is respectfully submitted that Bunker Holdings' Terms and Conditions, including the choice of law clause, were validly incorporated into the bunker supply contract under Liberian law and, as such, the issue of whether Bunker Holdings has a maritime lien on the Vessel must be decided under the substantive and procedural law of the United States.  *See Trans-Tec*, 518 F.3d at 1123-24

### 2. The bunker fuel was supplied on the order of the owner and authorized person on behalf of the vessel.

It is undisputed that to state a claim for a maritime lien under CIMLA, a party must supply necessaries to a vessel upon the order of the owner of the vessel or of a person authorized by the owner.  46 U.S.C. § 31342; *Ventura Packers, Inc., v. FV Jeanine Kathleen*, 305 F.3d 913, (9th Cir. 2002); *see also Trans-Tec*, 518 F.3d at 1124.  A maritime lien depends neither on any contract between the parties, nor on the operation of the general maritime law. *Ventura Packers*, 305 F.3d 913, 920.  Yang Ming attempts to avoid the enforcement of the maritime lien in the present case on the allegation that OWB Far East was not an agent with authority to bind the vessel and alternatively, that Bunker Holdings did not supply the Vessel with bunkers, rather Baltic Tankers did. See Dkt. #24, pp. 9-14.  Yang Ming's argument ignores undisputed material facts that OWB Far East had a regular course of business for and on behalf of Yang Ming in Russia and with Bunker Holdings. *See Kelmanov Decl.*, at ¶¶ 8-11. Bunker Holdings had repeatedly supplied bunker fuel to no fewer than twelve (12) Yang Ming vessels in Russia in the year preceding the supply to the M/V YM SUCCESS, and five (5) of those prior supplies had been arranged by OWB Far East. *Id*.  Yang Ming also misstates the undisputed material fact that Bunker Holdings did in fact supply the bunkers, albeit through an

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

1  agent, Baltic Tankers, but at all material times, the Bunker Holdings fuel used to supply the

2  M/V YM SUCCESS belonged to Bunker Holdings.  *Id*., at ¶¶ 28-29.

3         Yang Ming completely avoids the applicability of the Ninth Circuit's seminal case

4  which should guide and govern this Court's resolution of the dispute, *i.e. Marine Fuel Supply*

5  *& Towing Inc. v. M/V Ken Lucky*, 869 F.2d 473 (9th Cir. 1988).[8]  This case is directly on point

6  and straightforwardly establishes that Bunker Holdings possesses a maritime lien that can be

7  enforced against the YM SUCCESS (through the posted substitute security). In *Ken Lucky*, the

8  vessel's sub-charterer Bulkferts, through its managing agent Eurostem, ordered bunkers for the

9  vessel through a broker, Brook. *Id*. at 474.  Brook made the order for bunkers through Gray

10  Bunkering, who in turn, placed the order with supplier Marine Fuel. *Id*.  Marine Fuel delivered

11  the bunkers to the vessel on September 6, 1984 in Tampa, Florida and invoiced Brook via Gray

12  Bunkering. *Id*.  However, Brook subsequently went into receivership and failed to pay for the

13  bunkers, so Marine Fuel arrested the Ken Lucky in Portland, Oregon and asserted a maritime

14  lien for the provision of necessaries. *Id*. The vessel owner, much like Yang Ming here,

15  contested the lien on the ground that Brook was not the agent of Bulkferts and thus was not

16  authorized to procure necessaries for the vessel. *Id*., at 476. The Ninth Circuit Court of

17  Appeals rejected this narrow argument, holding that "Marine Fuel need not establish agency

18  between Brook and Bulkferts to fall within the scope of one entitled to a maritime lien under

19  the Act." *Id*. at 477. The Court went on to hold:

20         [Owner] concedes that Bulkferts was authorized to bind the vessel. It is clear that
21         Eurostem, as managing agent for Bulkferts, did order the fuel and it is also clear
        that Marine Fuel delivered the fuel *to the vessel*. Section 971 [now § 31342] states
22         that any person furnishing supplies or other necessaries *to a vessel* "upon" the
        order of a person authorized to bind the vessel shall be entitled to lien. It is clear
23         that Eurostem, as managing agent for Bulkferts, ordered the fuel, and it is also
        clear that Marine Fuel delivered the fuel *to the vessel*. Bulkferts had statutory

24  

25  [8] Yang Ming's grounds for ignoring the applicable precedent of *Ken Lucky* is based on its argument that Bunker
Holdings did not "supply" the bunkers to the Vessel.  As set forth in the declaration of Evgeny Kelmanov and
26  Exhibits 9 and 10 thereto, Baltic Traders was an agent of Bunker Holdings and at all material times it was Bunker
Holdings that supplied and delivered the bunkers to the M/V YM SUCCESS.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT - 13 (3:14-cv-06002-BHS)

LAW OFFICES OF
NICOLL BLACK & FEIG
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

authority to order the fuel under section 972 and it did so. Marine Fuel delivered the fuel to the vessel after Bulkferts ordered it.

*Id.* (italics in original).

The *Ken Lucky* court distinguished its holding that Marine Fuel possessed an enforceable maritime lien from an earlier ruling of the Ninth Circuit, *Farwest Steel Corp. v. Barge Sea-Span*, 828 F.2d 522 (9th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988), which held that a "general repair contractor was not endowed with sufficient 'management' authority to support a [necessaries] lien." *Id.* at 526.

As the *Ken Lucky* Court explained:

In *Farwest*, the steel was ordered by a contractor repairing the vessel. No one with authority to lien the vessel originated the order. ***Here Bulkferts, which clearly possessed the statutory authority to bind the vessel, ordered and received the bunkers and fuel***. Thus, we are not confronted with a *Farwest* [] situation, where a person who never had authority originated the order.

*Id.*, at 477 (emphasis added).

In the present case, there is no dispute that Yang Ming, as owners of the Vessel, had the authority under CIMLA to bind the Vessel and exercised that authority pursuant to CIMLA § 31341(a). Accordingly, *Ken Lucky* is precisely on point as the current action does not follow the precedent of the "general contractor" cases which look to *Farwest* and its progeny, but rather there is no doubt that Yang Ming authorized the bunkers to be obtained on behalf of the Vessel. The Vessel's Master and Chief Engineer signed for and received not only the bunker delivery notes, but also all of the other supplemental paperwork associated with the supply. *See* Kelmanov Decl., at ¶¶ 19-22 and Exhibits 5-6. All of which is sufficient to establish implied authority to incur a lien against the Vessel for fuel. *Ken Lucky*, 869 F.2d at 478 (citing *Yacht, MARY JANE v. Broward Marine, Inc.*, 313 F.2d 516, 517 (5th Cir. 1963) (implied authority existed because the "real" captain failed to object although he was aware of work being done for vessel); *Reinholm Crane & Rigging Co., Inc. v. M/V Ocean Crown*, 484 F. Supp. 935, 936 (W. D. Wash. 1979) (no objections from vessel's master, owner or charterer to obvious and prolonged services precluded summary judgment because material issue of fact remained as to

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 14 (3:14-cv-06002-BHS)

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

the existence of implied authority); *Jan C. Uiterwyk Co. v. M/V MARE ARABICO*, 459 F. Supp. 1325, 1330-31 (D. Md. 1978)).

Here, Yang Ming had orders for bunkers through OWB Far East, (an entity admittedly located in Singapore) for the supply of bunkers to vessels at port calls in Russia. *See* Dkt. #25, ¶ 3. It is clear from the exchanges between Yang Ming and OWB Far East, that it was not only contemplated, but completely necessary for OWB to obtain the supply of the bunkers from local sources in Russia, *See* Dkt. #25, at Exhibit A-B. Accordingly, OWB Far East was absolutely entitled and authorized for and on behalf of Yang Ming to enter into a bunker supply contract with Bunker Holdings which would, among other things, give rise to a maritime lien against the vessel.[9] *See e.g.*, *Ken Lucky,* 869 F.2d at 478 ("A claimant's dealings with an intermediary at the port rather than a charterer or owner does not preclude the existence of a lien.") (citing *Reinholm Crane & Rigging Co., Inc. v. M/V Ocean Crown*, 484 F. Supp. 935, 936 (W. D. Wash. 1979)). The bunkers were absolutely supplied on the order of the Owners, and just because the arrangements were made through OWB Far East (as they had been done at least five (5) times prior), does not change the authority provided by Owners Yang Ming or eliminate the existence of Bunker Holdings' maritime lien.

**D.    Bunker Holdings Has a Maritime Lien for Necessaries Provided to the Vessel under CIMLA and Summary Judgment Must Be Granted in Favor of Plaintiff.**

As set forth above, Plaintiff it is undisputed that Plaintiff has set forth the material facts and evidence which establish the existence of a maritime lien pursuant to Bunker Holdings' bunker supply contract and incorporated Terms and Conditions. Under the governing law of

---

[9] Yang Ming cannot reasonably feign surprise at Bunker Holdings asserting its right to exercise the maritime lien. For one matter, the Vessel itself is subject to maritime liens when necessaries are supplied by virtue of the law of the Flag, *i.e.* Liberian Maritime Law at § 114. Under Liberian law, "the managing owner, ship's husband, Master, or any person to whom the management of the vessel at the port of supply is entrusted, including any such appointed by a charterer, owner pro hac vice or agreed purchaser in possession, shall be presumed to have authority from the owner to procure such necessaries . . ." *See* Liberian Maritime Law accessed at http://faolex.fao.org/docs/pdf/lbr132704.pdf.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT - 15 (**3:14-cv-06002-BHS**)

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

this Circuit, Bunker Holdings is permitted to secure its lien by proceeding against the Vessel where it could be found in the U.S. - *i.e.* within the Western District of Washington, and the Court must apply the substantive and procedural law of the United States to the resolution of Plaintiff's maritime lien claim. *See* Point C (1), *supra*.

### 1.     Fuel bunkers are necessaries under CIMLA.

The Ninth Circuit has universally held "[f]uel bunkers are necessaries within the meaning of § 31342." *Monjasa A/S v. M/V Peristil*, 2013 U.S. Dist. LEXIS 82583, at 16 (D. Or. June 12, 2013) (*quoting Trans-Tec*, 518 F. 3d at 1128); *see also Nustar Energy Servs. V. M/V Cosco Auckland*, 2015 U.S. Dist. LEXIS 145036, at 4 (S.D. Tex. Oct. 26, 2015) ("[i]t is undisputed that … bunkers are "necessaries" under 46 U.S.C. § 31342"); *Tomen Am., Inc. v. M/V Sava*, 1999 U.S. Dist. LEXIS 4628, *1 (E.D.N.Y. 1999) (Bunkers are necessaries "as defined under the Maritime Liens Act, 46 U.S.C. § 31341."); *Equilease Corp. v. M/V Sampson*, 793 F.2d 589, 603 (5th Cir. 1986) (en banc). There is generally a presumption under § 31342(a), that ". . . one furnishing supplies to a vessel acquires a maritime lien." *Maritrend, Inc. v. Serac & Co*., 348 F.3d 469, 471 (5th Cir. 2003).

### 2.     The bunkers were supplied "To a Vessel."

In the relevant transaction, Bunker Holdings was the provider and seller of the fuel. *See* Kelmanov Decl. at ¶¶ 14-22 and 28-29. The fuel was physically and dually delivered by Bunker Holdings, through its agent Baltic Tanker to the M/V YM SUCCESS at the contractually predetermined location, Nakhodka, Russia. *Id*. Because the fuel was provided by Bunker Holdings to the Vessel and accepted by the agents of Owners, the Master and Chief Engineer of the Vessel, there can be no doubt that Plaintiff supplied "necessaries" as defined by the statute. *Id.,* at Exhibits 2-6. Accordingly, Plaintiff has satisfied the first two (2) requirements to establish a maritime lien, the supply of necessaries to a vessel: to wit, the supply of bunkers to the M/V YM SUCCESS.

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

**3.     The bunkers were supplied on the order of a person authorized to bind the vessel.**

As set forth above in detail in Section C(4), Bunker Holdings also easily meets the third requirement, *i.e.*, that the provision of necessaries was made upon the order of someone with presumed authority to bind the Vessel.  Here, Yang Ming as Owners of the Vessel had the authority to order bunkers on behalf of the Vessel and to bind the Vessel to a lien.  46 U.S.C. § 31341(a). In carrying out that order from Owners, OWB Far East was entitled to engage and order the bunkers from Bunker Holdings.  *Ken Lucky*, 869 F.3d at 477.  Furthermore, the Master and Chief Engineer, through their acceptance of the bunkers supplied, approved of the supply and impliedly authorized the incursion of the lien. *Id*.   The fact that neither the Vessel nor the Owners were parties to the Bunker Holdings' Bunker Supply Contract is immaterial to the existence of a maritime lien. *See, e.g., Trans-Tec*, 518 F.3d at 1126-27.  Bunker Holdings provided a supply of bunkers to a party authorized to act on behalf of the Vessel, and as such has rightfully and legally acquired and is entitled to a maritime lien enforceable against the Vessel.

## IV.   <u>CONCLUSION</u>

**WHEREFORE**, for the foregoing reasons, Plaintiff BUNKER HOLDINGS LTD. respectfully submits that Claimant Yang Ming has failed to establish as a matter of undisputed material fact and law an entitlement to summary judgment and prays that Yang Ming's motion for summary judgment (Dkt. #24) be denied in its entirety.   BUNKER HOLDINGS LTD. further submits that as there is no genuine dispute of material fact as to the existence of a maritime lien, that BUNKER HOLDINGS LTD. is entitled to judgment as a matter of law, and that its cross-motion for summary judgment must be granted. Accordingly, Plaintiff respectfully requests that this Honorable Court enter an Order finding that BUNKER HOLDINGS has a valid lien on the M/V YM SUCCESS for necessaries provided to the Vessel

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

1 | and order a judgment of USD 1,855,155.00 plus applicable interest and costs against the

2 | Defendant Vessel, *in rem*, to satisfy the maritime lien against the Vessel.

3

4 | DATED March 21, 2016

5 | NICOLL BLACK & FEIG PLLC

6 | */s/ Jeremy B. Jones*
Jeremy B. Jones, WSBA No. 44138
7 | Nicoll Black & Feig PLLC
1325 Fourth Avenue, Suite 1650
8 | Seattle, WA  98101
Telephone:  (206) 838-7555
9 | Fax:  (206) 838-7515
E-mail:  jjones@nicollblack.com
10
CHALOS & CO, PC
11

12 | George M. Chalos
*Pro Hac Vice Counsel*
13 | Chalos & Co, P.C.
55 Hamilton Avenue
14 | Oyster Bay, New York 11771
Telephone: (516) 714-4300
15 | Fax: (516) 750-9051
E-mail: gmc@chaloslaw.com
16
Attorneys for Plaintiff Bunker Holdings Ltd.
17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT - 18 (3:14-cv-06002-BHS)

LAW OFFICES OF
NICOLL BLACK & FEIG
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on the date set forth below, I electronically filed the foregoing with

3   the Clerk of the Court using the CM/CF system which will send notification of such filing to

    all counsel of record.

4

5   Barbara L. Holland, WSBA No. 11852          ☐ VIA HAND DELIVERY
    Tyler W. Arnold, WSBA No. 43129             ☐ VIA FACSIMILE
6   Garvey Schubert Barer                        ☐ VIA U.S. MAIL
    1191 Second Avenue, Suite 1800              ☐ VIA E-MAIL
7   Seattle, WA 98101                            ☐ VIA OVERNIGHT COURIER
    Direct Line:  (206) 464-3939                 ☒ VIA CM/ECF
8   Fax:  (206) 464-0125
    Email:  bholland@gsblaw.com
9           tarnold@gsblaw.com
    *Attorneys for Defendant M/V YM SUCCESS*
10  *and Claimant Yang Ming Liberia Corp.,*
    *owner of Defendant M/V YM SUCCESS*

11

12        DATED this 21st day of  March 2016.

13                                    */s/ Jeremy B. Jones*
                                      Jeremy B. Jones, WSBA No. 44138
14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT - 19 **(3:14-cv-06002-BHS)**

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555