UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BUNKER HOLDINGS LTD.,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>M/V YM SUCCESS (IMO 9294800),<br><br>　　　　　　　　Defendant. | CASE NO. C14-6002 BHS<br><br>ORDER GRANTING CLAIMANT'S MOTION FOR SUMMARY JUDGMENT. DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S REQUEST FOR LEAVE TO AMEND |

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkts. 24, 27). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

**I. PROCEDURAL HISTORY**

On December 22, 2014, Plaintiff Bunker Holdings Ltd. ("Bunker Holdings") brought an *in rem* action against the *M/V YM Success* ("*YM Success*"). Dkt. 1 ("Comp."). Bunker Holdings claims it has a maritime lien against the *YM Success* under the Commercial Instruments and Maritime Lien Act ("CIMLA"), 46 U.S.C. §§ 31301–31343. *Id.* ¶¶ 1, 28.

On January 7, 2015, Claimant Yang Ming Liberia Corp. ("Yang Ming")—the owner of the *YM Success*—appeared specially under Supplemental Admiralty Rule E(8) to defend the *YM Success*. Dkt. 13.

On March 3, 2016, Yang Ming moved for summary judgment. Dkt. 24. On March 21, 2016, Bunker Holdings responded and cross-moved for summary judgment. Dkt. 27. On April 4, 2016, Yang Ming replied. Dkt. 33. On April 8, 2016, Bunker Holdings replied. Dkt. 34. On April 13, 2016, Yang Ming filed a surreply[1] and a notice of supplemental authority. Dkts. 37, 38.

On May 17, 2016, the Court requested additional briefing from the parties and renoted the pending motions to May 27, 2016. Dkt. 39. On May 23, 2016, the parties filed opening briefs. Dkts. 40, 41. On May 27, 2016, the parties filed responsive briefs. Dkts. 43, 44. On June 1, 2016, Yang Ming filed a surreply. Dkt. 46.

## II. FACTUAL BACKGROUND

The *YM Success* is a Liberian-flagged containership that transports cargo containers around the world. Dkt. 25, Declaration of Alan Wang ("Wang Dec.") ¶ 2. In the summer of 2014, Yang Ming contacted OW Bunker Far East ("OW Far East") by email to negotiate terms for the delivery of fuel to Yang Ming's ships in Russia. Wang Dec., Ex. A. OW Far East agreed to provide fuel to Yang Ming's ships at the port in Nakhodka, Russia between September and October 2014. *Id.*

---

[1] Yang Ming seeks to strike new arguments and factual statements in Bunker Holdings' reply. Dkt. 37. The Court will address new arguments below, and will identify the evidence it relies upon in reaching its decision.

On September 22, 2014, Yang Ming's supply team contacted OW Far East to arrange fuel for the *YM Success* in Nakhodka. Wang Dec., Ex. B. OW Far East sent Yang Ming a sales confirmation, which lists OW Far East as the seller and Transbunker as the supplier. Wang Dec., Ex. C.

On October 8, 2014, OW Far East engaged Bunker Holdings to supply fuel to the *YM Success* in Nakhodka. Dkt. 28, Declaration of Evgeny Kelmanov ("Kelmanov Dec.") ¶ 8. Bunker Holdings previously provided fuel to twelve Yang Ming vessels in Russia between April 2013 and September 2014. *Id.* ¶ 9, Ex. 1. Of those prior fuel supplies, five were arranged by OW Far East for the *YM Masculinity*, the *YM Elixir*, the *YW New Jersey*, the *YM Cypress*, and the *YM Moderation*. *Id.* ¶ 10.

The *YM Success* received fuel in Nakhodka in two separate deliveries on October 13 and 14, 2014 ("Nakhodka fuel deliveries"). Dkt. 1-1 at 30–33. The delivery receipt for the October 13 delivery identifies the supplier as the Baltic Tanker Co., Ltd. ("Baltic Tanker") and the supply vessel as the *Nikolay Shalavin*. *Id.* at 30. The receipt for the October 14 delivery identifies Baltic Tanker as the supplier and the supply vessel as the *Lidoga*. *Id.* at 32. Bunker Holdings and Baltic Tanker have an agreement, under which Baltic Tanker was responsible for sourcing and delivering fuel in Russia. Kelmanov Dec. ¶ 19 n.1.

OW Far East sent Yang Ming an invoice for the Nakhodka fuel deliveries. Wang Dec., Ex. D. The invoice states that payment was due on November 26, 2014. *Id.* Before Yang Ming paid OW Far East for the fuel deliveries, Yang Ming learned that OW Far East had declared bankruptcy. Wang Dec. ¶ 7.

1  On November 8, 2014, Yang Ming received a demand letter from Bunker

2  Holdings for the Nakhodka fuel deliveries. Dkt. 26, Declaration of Tyler Arnold, Ex. 2.

3  Yang Ming declined Bunker Holdings demand. On December 24, 2014, Bunker

4  Holdings arrested the *YM Success* in Tacoma, Washington. Dkt. 14.

## III. DISCUSSION

6  Both parties move for summary judgment on whether Bunker Holdings is entitled

7  to a maritime lien against the *YM Success* for the Nakhodka fuel deliveries. Dkts. 24, 27.

**A.  Summary Judgment Standard**

9  Summary judgment is proper only if the pleadings, the discovery and disclosure

10  materials on file, and any affidavits show that there is no genuine issue as to any material

11  fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

12  The moving party is entitled to judgment as a matter of law when the nonmoving party

13  fails to make a sufficient showing on an essential element of a claim in the case on which

14  the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

15  323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole,

16  could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

17  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

18  present specific, significant probative evidence, not simply "some metaphysical doubt").

19  *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists

20  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

21  jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.    Maritime Lien**

Yang Ming contends Bunker Holdings is not entitled to a maritime lien against the *YM Success* under two alternate theories: (1) United States law does not govern this dispute; and (2) Bunker Holdings cannot satisfy the requirements for a maritime lien under CIMLA.  Dkt. 24 at 1.  Bunker Holdings disagrees, arguing it is entitled to a maritime lien under CIMLA.  Dkt. 27 at 7.

The Court need not address Yang Ming's first argument because even assuming United States law governs this dispute, Bunker Holdings has failed to show that it is entitled to a maritime lien under CIMLA.  To obtain a maritime lien under CIMLA,

Bunker Holdings must show (1) it furnished repairs, supplies, or other necessaries, (2) to a vessel, (3) on the order of the vessel's owner or a person authorized by the owner. *See* 46 U.S.C. § 31342(a); *Int'l Seafoods of Alaska, Inc. v. Park Ventures, Inc.*, 829 F.2d 751, 753 (9th Cir. 1987).

The parties' dispute hinges on the third element, which requires Bunker Holdings to show it supplied the Nakhodka fuel on the order of either Yang Ming or someone authorized by Yang Ming. It is uncontested that Yang Ming did not order the Nakhodka fuel from Bunker Holdings. Dkt. 24 at 12; Dkt. 27 at 9, 17. Instead, Yang Ming ordered the fuel from OW Far East, which then engaged Bunker Holdings to supply the fuel.

The question therefore becomes whether OW Far East was authorized by Yang Ming to bind the *YM Success.* As other courts have recognized, there are two lines of cases that provide a framework for answering this question: the general contractor/subcontractor line, *see, e.g.*, *Port of Portland v. M/V Paralla*, 892 F.2d 825 (9th Cir. 1989), and the principal/agent, or middleman, line, *see, e.g.*, *Marine Fuel Supply & Towing, Inc. v. M/V Ken Lucky*, 869 F.2d 473 (9th Cir. 1989).

Under the general contractor line of cases, "[i]t is the general rule that a general contractor does not have the authority to bind a vessel." *Port of Portland*, 892 F.2d at 828. Consequently, a subcontractor will normally not be entitled to a maritime lien. *Id.* "The sole exception to the rule against the subcontractor lien will occur where the subcontractor has been engaged by a general contractor in circumstances where the general contractor was acting as an agent at the direction of the owner to engage specific subcontractors . . . ." *Farwest Steel Corp. v. Barge Sea-Span 241*, 828 F.2d 522, 526 (9th

Cir. 1987). Meanwhile, under the middleman line of cases, "courts hold that physical suppliers in a line of agency relationships can assert a lien against vessels, even though there are numerous intermediaries between supplier and vessel." *O'Rourke Marine Servs. L.P., L.L.P. v. MV COSCO Haifa*, __ F. Supp. 3d __, 2016 WL 1544742, at *4 (S.D.N.Y. Apr. 8, 2016); *see also Lake Charles Stevedores, Inc. v. PROFESSOR VLADIMIR POPOV MV*, 199 F.3d 220, 229 (5th Cir. 1999).

Simply put, to obtain a maritime lien against the *YM Success*, Bunker Holdings must demonstrate that either (1) OW Far East was acting as an agent for Yang Ming, or (2) Yang Ming directed OW Far East to engage Bunker Holdings as the specific subcontractor to supply the Nakhodka fuel.

With respect to the former, Bunker Holdings has failed to show that OW Far East and Yang Ming had an agency relationship. At the outset, Bunker Holdings has not submitted any evidence that Yang Ming expressly appointed OW Far East as its agent. Although Bunker Holdings contends that OW Far East had implied authority, Bunker Holdings has not pointed to representations from Yang Ming to Bunker Holdings about OW Far East's authority. *See Port of Portland*, 892 F.2d at 829. Indeed, the record is devoid of any communications between Yang Ming and Bunker Holdings until the November 2014 demand letter. *See* Wang. Dec. ¶ 10 ("Prior to receipt of Bunker Holdings' demand letter . . . Yang Ming had not had any communication with Bunker Holdings Ltd. regarding the Nakhodka Fuel Deliveries . . . .").

As for the latter, Bunker Holdings argues that Yang Ming and OW Far East contemplated and understood that OW Far East would engage Bunker Holdings to

provide the fuel for the Nakhodka deliveries. Dkt. 27 at 15; Dkt. 34 at 9. To support this argument, Bunker Holdings points to the email exchanges between Yang Ming and OW Far East. In two emails, OW Far East informs Yang Ming that its "local managers in Vladivostok will take good care of the deliveries and planning." Wang Dec., Ex. A at 9, 11. In another email, Yang Ming asks OW Far East to "[p]lease arrange our order." Wang Dec., Ex. B at 13.

Bunker Holdings has failed to support the inferences that follow from these statements with evidence. There is no evidence in the record that Yang Ming directed, authorized, or was even involved in the selection of Bunker Holdings as the supplier for the Nakhodka fuel deliveries. Indeed, the evidence in the record shows otherwise. *See* Wang Dec. ¶ 10 ("[Yang Ming] was unaware of any orders or agreements between Bunker Holdings Ltd. and OW Bunker Far East relating to [the Nakhodka fuel] deliveries."); *id.* ¶ 11 ("Yang Ming did not direct OW Bunker Far East to contract with Bunker Holdings for the Nakhodka Fuel Deliveries for the YM SUCCESS, and did not approve of any such contract.").

Bunker Holdings also points to its prior deliveries of fuel to Yang Ming vessels on behalf of OW Far East. Dkt. 27 at 4, 15; Dkt. 34 at 9. Bunker Holdings, however, has failed to submit evidence showing Yang Ming knew about Bunker Holdings' involvement in these prior deliveries. For example, the sales confirmation and delivery

receipts for the Nakhodka fuel delivery do not list Bunker Holdings as the supplier.[2] *See* Dkt. 1-1 at 30, 32. Even assuming Yang Ming knew about Bunker Holdings' involvement in the prior deliveries, Yang Ming's knowledge that Bunker Holdings would likely provide fuel to the *YM Success* in Nakhodka, without more, is not enough to bind the *YM Success*. *See Port of Portland*, 892 F.2d at 828 ("The most the Port has shown is the fact that it was most likely, even perhaps rather certain, that Northwest would choose the facilities of the Port when it did its work. That alone does not constitute a direction or requirement to use those services.").

Ultimately, Bunker Holdings has not demonstrated that it provided fuel to the *YM Success* "on the order of the vessel's owner or a person authorized by the owner." 46 U.S.C. § 31342(a). Because Bunker Holdings has failed to show it is entitled to a maritime lien under CIMLA, the Court grants Yang Ming's summary judgment motion and denies Bunker Holdings' cross-motion.

**C.     Request to Amend**

In its final supplemental brief, Bunker Holdings seeks leave to amend its complaint under Rule 15 to assert a new cause of action under Liberian law. Dkt. 44 at 4–6. Yang Ming filed a surreply opposing the request. Dkt. 46.

---

[2] In its reply, Bunker Holdings alleges it is a member of the Transbunker Group, which was listed as the supplier on the sales confirmation for the Nakhodka fuel delivery. *See* Dkt. 34 at 4 n.2. This is a new and unsupported argument raised for the first time in reply, and the Court may decline to consider it. *See United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir. 1993) ("[A] party may not make new arguments in the reply brief."). In any event, Bunker Holdings does not submit evidence showing that Yang Ming knew of this connection. Further, as discussed above, Yang Ming's knowledge that Bunker Holdings would likely provide the Nakhodka fuel, without more, is insufficient.

1    At the outset, Bunker Holdings' request for relief is not properly before the Court.
Bunker Holdings seeks leave to amend its complaint in a supplemental reply that was
supposed to address a discrete question posed by the Court. *See* Dkt. 39 at 3.  A party
may not raise new arguments or requests in a reply brief. *See Cox*, 7 F.3d at 1463;
*Karpenski v. Am. Gen. Life Cos., LLC*, 916 F. Supp. 2d 1188, 1191 (W.D. Wash. 2012).

   Even if Bunker Holdings' request was properly before the Court, several
considerations weigh firmly against granting leave to amend.  Bunker Holdings frames its
request to amend under Rule 15's liberal standard. *See* Fed. R. Civ. P. 15(a)(2) ("The
court should freely grant leave when justice so requires.").  However, pursuant to the
Court's scheduling order, the deadline to amend pleadings was July 23, 2015. Dkt. 23.
When a party seeks to amend a pleading after the deadline for doing so has passed, the
moving party must satisfy the "good cause" standard of Rule 16(b)(4). *In re W. States
Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013).  Under this
standard, the Court "primarily considers the diligence of the party seeking the
amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).
"Although the existence or degree of prejudice to the party opposing the modification
might supply additional reasons to deny a motion, the focus of the inquiry is upon the
moving party's reasons for seeking modification." *Id.*

   Bunker Holdings has failed to show good cause for its belated request to amend its
complaint.  Bunker Holdings waited until its last supplemental brief on the parties' cross-
motions for summary judgment to seek leave to amend. *See* Dkt. 44 at 4–6.  The Court's
scheduling order set the trial date for the end of this month. Dkt. 23.  Although Bunker

Holdings contends Yang Ming will not be prejudice by the late amendment, Dkt. 44 at 6, Yang Ming asserts that the proposed amendment would be highly prejudicial because Yang Ming "conducted discovery and prepared its case based on [Bunker Holdings'] allegation of a right to recovery under CIMLA," Dkt. 43 at 4.  As such, Yang Ming has not prepared a defense for this newly proposed claim.  Dkt. 46 at 2–3; *see also Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint.").  For these reasons, the Court denies Bunker Holdings' request to amend its complaint.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Yang Ming's motion for summary judgment (Dkt. 24) is **GRANTED** and Bunker Holdings' cross-motion for summary judgment (Dkt. 27) is **DENIED.**  Bunker Holdings' request to amend its complaint is **DENIED.**  The Clerk shall close this case.

Dated this 6th day of June, 2016.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge